IN THE UNITED STATES DISTRICT COURT
IN THE SOUTHERN DISTRICT OF ALABAMA

BERNICE MUHAMMAD

    Plaintiff

09 -53 - KD · C

        vs.

HSBC BANK USA, NATIONAL ASSOCIATION as Trustee for MERRILL LYNCH
MORTGAGE INVESTORS, INC. MORTGAGE LOAN ASSET – BACKED
CERTIFICATES, SERIES 2002 - HEI

    Defendants

### COMPLAINT IN VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT [15 USC 1692(e), § 807(2)(a), 15 USC 1692(f) § 808(1), 15 USC 1692(g ) § 809(b)]

Comes now, the Plaintiff, Bernice Muhammad, and brings this Verified

Complaint and moves this Honorable Court for a Temporary Restraining Order, ordering

Defendants, HSBC Bank USA, National Association as Trustee for Merrill Lynch

Mortgage Investors, Inc., to cease any foreclosure action on the Plaintiff's homeplace

located at 255 Cherokee Street, Mobile, Alabama 36604 and shows unto this Court as

follows:

1.      On July 31, 2002, Plaintiff entered into a mortgage with Option One

        Mortgage Corporation.  Said mortgage and note were subsequently

        assigned to American Home Mortgage Servicing, Inc. and later assigned

        to HSBC Bank USA, National Association as Trustee for Merrill Lynch

        Mortgage Investors, Inc.  Mortgage Loan Asset – Backed Certificates,

Series 2002 – HEI.  Copies of the Mortgage and Note are attached hereto and marked as Exhibits A and B.

2. Subsequently, Plaintiff filed for Chapter 13 Bankruptcy and for an automatic stay of the mortgage payments in 2003.

3. On August 11, 2003, Plaintiff entered an agreement with Option One Mortgage Corporation to satisfy the mortgage arrears on said property which was ratified by the Bankruptcy Court, as evidenced by Exhibit C.

4. Plaintiff paid in accordance with the agreement.

5. On July 15, 2004, a payment was returned to Plaintiff from Option One Mortgage Corporation citing that the corporation was released from stay (Exhibit D).

6. Option One Mortgage Corporation proceeded to foreclose and Plaintiff filed an emergency motion to enjoin Option One Mortgage Corporation from foreclosing or to dismiss the Chapter 13 Bankruptcy which was dismissed by Order of October 28, 2004 (Exhibit E).

7. In October 2005, Plaintiff and Defendant entered into an agreement after Hurricane Katrina to put all arrears to the back of the mortgage.

8. Plaintiff filed a new Chapter 13 Bankruptcy in November of 2004 whereby Creditor, Option One Mortgage Corporation was included.

9. Defendant filed a Statement of Pre-Petition Arrears dated November 12, 2004 as $14,900.47 to which the Plaintiff objected but the Court allowed the arrears as stated (Exhibit F).

10.      Plaintiff and Defendant discussed a workout after Hurricane Katrina to place all mortgage arrears to the back of the mortgage.

11.      Defendant sent workout options to Plaintiff dated August 7, 2006 and Plaintiff answered with requested information on October 5, 2006 (Exhibit G).

12.      Plaintiff got no response from the Defendant and resubmitted information for workout options in 2007 (Exhibit H).

13.      On November 13, 2007, a statement of arrearages was submitted to Plaintiff to which she disputed (Exhibit I).

14.      On December 3, 2008, the Bankruptcy was dismissed (Exhibit J).

15.      Defendant notified Plaintiff by letter of January 2, 2009 that she owed a debt of $140,099.58 and could make a request in writing within thirty (30) days after the receipt of the notice that the validity of the debt was in dispute and the Defendant would provide verification of said debt to Plaintiff. A copy of the letter to collect the debt is attached hereto as Exhibit K.

16.      On January 14, 2009, Plaintiff made a written demand upon Defendant that she disputes the balance owed on her homeplace and requested a statement of the debt and all lawful charges as required by law. A copy of that demand is attached hereto as Exhibit L.

17.      Defendant received Plaintiff's demand for verification, but has failed to timely furnish a statement of the debt and all lawful charges. On January 6, 2009, Defendant accelerated the debt and foreclosure sale. A copy of

the Notice of Acceleration and Foreclosure is attached hereto as Exhibit M.

18.    Publication of the foreclosure sale began January 9, 2009 and ended January 23, 2009.

19.    Plaintiff has contacted Defendant to resolve this matter and Defendants have failed and/or refused to respond to Plaintiff's request for an explanation of the debts owed.

20.    Continuation of the foreclosure at this time will irreparably harm Plaintiff because:

    (a)    There is a great likelihood that Plaintiff will prevail on the merits, since Defendants have failed to provide Plaintiff with the correct amount to reinstate the mortgage.

    (b)    The interest in protecting Plaintiff from irreparable harm caused by this defective foreclosure outweighs any interest Defendants may have in proceeding with the foreclosure until a hearing on the merits.

21.    As reflected in the attached notice, Plaintiff has notified Defendants of the setting of the Instant Motion for Temporary Restraining Order and has given their counsel an opportunity to be present.

WHEREFORE, Plaintiff prays the Court to take jurisdiction of this cause, and to fix and ascertain the sum of the debt and all lawful charges necessary to cure said debt, and the sum of all credits to be allowed to the Plaintiff, and for such other relief as may be proper.

Respectfully submitted on this 29th day of January, 2009.

<u>VERIFICATION</u>

*Bernice Muhammad*

BERNICE MUHAMMAD

STATE OF ALABAMA

COUNTY OF MOBILE

Before me, the undersigned, a Notary Public, in and for said State and County,

personally appeared, BERNICE MUHAMMAD, whose name is signed to the foregoing

Petition, who is known to me, acknowledged before me on this date, that she swears to

the truth and accuracy of all of the factual allegations set out in said Petition.

Given under my hand and notarial seal on this the 29th day of January 2009.

*Lwanda K. Allen*

NOTARY PUBLIC

My Commission Expires: _10/31/2012_

IN THE UNITED STATES DISTRICT COURT
IN THE SOUTHERN DISTRICT OF ALABAMA


BERNICE MUHAMMAD

    Plaintiff

              vs.

HSBC BANK USA, NATIONAL ASSOCIATION as Trustee for MERRILL LYNCH
MORTGAGE INVESTORS, INC. MORTGAGE LOAN ASSET – BACKED
CERTIFICATES, SERIES 2002 - HEI

    Defendants


## CERTIFICATION OF NOTICE


    I, Creola G. Ruffin, the attorney for Plaintiff in the above-entitled action, hereby

certify that I provided notice to Defendants by serving their counsel, Johnson and

Freedman, by fax and by telephone on January 29, 2009, that this action would be filed

and that Plaintiff would move this court for a temporary restraining order at

approximately 4:30 p.m. on January 29, 2009.


Dated: January 29, 2009                                     

                                        BERNICE MUHAMMAD, Pro Se

# EXHIBIT A

2002069777  Book-5201  Page-1385
Total Number of Pages: 11

B - 40567

28.50
144.00
172.50
10.00
182.50
2.00
184.50

WHEN RECORDED MAIL TO:
OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57076
IRVINE, CA 92619-7076
ATTN:  QUALITY CONTROL

**ORIGINAL**

Loan Number: 391000347
Servicing Number: 671167-5

[Space Above This Line For Recording Data]

## MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on  July 30, 2002           . The grantor is
BERNICE MUHAMMAD   a single Woman

("Borrower"). This Security Instrument is given to

Option One Mortgage Corporation, a California Corporation

which is organized and existing under the laws of CALIFORNIA                            , and whose
address is                              3 Ada, Irvine, CA  92618

("Lender"). Borrower owes Lender the principal sum of
NINTY SIX THOUSAND

· · · AND NO/100THS              Dollars (U.S.  $96,000.00          ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debts, if not paid earlier, due and payable on  August 01, 2032        .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and
all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced
under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby
mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following
described property located in

02-29-10-28-2-001-043                      Mobile                     County, Alabama:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

SEE  EXHIBIT "A"

which has the address of  255  CHEROKEE STREET, MOBILE
Alabama      36606-1237          ("Property Address");                    [Street, City],
             [Zip Code]

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever,
together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and
fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this
Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

ALABAMA - Single Family
Page 1 of 7

ALD10011.wp (11-30-01)

Loan Number: 391000347          Servicing Number: 671167-5          Date: 07/30/02

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If the Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower; (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the hold of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, or applicable Law otherwise requires, insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any

ALD10012.wp (11-30-01)

Loan Number: 391000347          Servicing Number: 671167-5          Date: 07/30/02

such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower;s right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

If Borrower obtains earthquake insurance, any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Lender, then such insurance shall (i) name Lender as loss payee thereunder, and (ii) be subject to the provisions of this paragraph 5.

6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary/secondary residence and that Borrower will so occupy this property as its sole primary/secondary residence within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise to occupy the property as Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument: (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the Property or any portion thereof or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights or powers of Lender with respect to this Security Instrument or the Property. All causes of action of Borrower, whether accrued before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract and causes of action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender, and the proceeds thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may release any monies so received by it or any part thereof, as Lender may elect. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof. Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate the foregoing provisions and as Lender shall request.

7. Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate in effect from time to time and shall be payable, with

Page 3 of 7                                                                                    ALD10013.wp (11-30-01)

Loan Number: 391000347          Servicing Number: 671167-5          Date: 07/30/02

interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments no longer be required, at the option of Lender, of mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirements for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking or any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Lender may apply, use or release the condemnation proceeds in the same manner as provided in paragraph 5 hereof with respect to insurance proceeds.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not exceed or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph

17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the

Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charge, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

ALD10014.wp (11-30-01)

Loan Number: 391000347          Servicing Number: 671167-5          Date: 07/30/02

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days for such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration has occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorney's fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration has occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more change of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will also contain any other information required by applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law. The holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

Borrower shall be solely responsible for, shall indemnify, defend and hold harmless Lender, its directors, officers, employees, attorneys, agents, and their respective successors and assigns, from and against any and all claims, demands, causes of action, loss, damage, cost (including actual attorneys' fees and court costs and costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, abatement, containment, remedial or other required plan), expenses and liability directly or indirectly arising out of or attributable to (a) the use, generation, storage, release, threatened release, discharge, disposal, abatement or presence of Hazardous Substances on, under or about the Property, (b) the transport to or from the Property of any Hazardous Substances, (c) the violation of any Hazardous Substances law, and (d) any Hazardous Substances claims.

As used in paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

ADDITIONAL COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** If any installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, Lender, at its option, and subject to applicable law, may then or thereafter invoke the power of sale and/or any other remedies or take any other actions permitted by applicable law. Lender will collect all expenses incurred in pursuing the remedies described in this Paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

ALD10015.wp (11-30-01)

Loan Number: 391000347          Servicing Number: 671167-5          Date: 07/30/02

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in paragraph 14. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in

Mobile

County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a fee for releasing the Property for services rendered if the charging of the fee is permitted under applicable law.

23. Waivers. Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

24. Misrepresentation and Nondisclosure. Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable.

25. Time is of the Essence. Time is of the essence in the performance of each provision of this Security Instrument.

26. Waiver of Statute of Limitations. The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

27. Modification. This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

28. Reimbursement. To the extent permitted by applicable law, Borrower shall reimburse Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Lender their fees in connection with Lender, including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien releases and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.

29. Clerical Error. In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to reexecute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

30. Lost Stolen, Destroyed or Mutilated Security Instrument and Other Documents. In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

31. Assignment of Rents. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security instrument and Borrower has not abandoned the Property.

32. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

ALD10016.wp (11-30-01)

Loan Number: 391000347     Servicing Number: 671167-5     Date: 07/30/02

[Check applicable boxes]

[X] Adjustable Rate Rider     [ ] Condominium Rider     [ ] 1-4 Family Rider
[ ] No Prepayment Penalty Option Rider     [ ] Planned Unit Development Rider     [ ] Occupancy Rider
[ ] Other(s) (specify)

      BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
                                                                  -Borrower

_____     _____ (Seal)
                                                                  -Borrower

*Bernice Muhammad* (Seal)     _____ (Seal)
BERNICE MUHAMMAD     -Borrower                                                   -Borrower

_____ (Seal)     _____ (Seal)
                -Borrower                                                   -Borrower

STATE OF ALABAMA,             *MOBILE*     County ss:

      On this *30th* day of *July* , *2002*, I, *Richard Singleton Sawyer* a Notary Public in and for said county and in said state, hereby certify that *Bernice Mohammad*

foregoing conveyance, and who *is* known to me, acknowledged before me that, being informed of the contents of the conveyance, *s*he executed the same voluntarily and as *a Muslim* act on the day the same bears date.
Given under my hand and seal of office this *30* day of *July* , *2002*.

My Commission Expires: *10/10/2004*     *Richard Singleton Sawyer*
                                                Notary Public

This instrument was prepared by

*Option One Mortgage*
*PO Box 57076*
*Irvine, Ca. 92619-7076*

**EXHIBIT "A"**
**Legal Description**

That lot of land described as beginning at a point on the East line of Cherokee Street, 250 feet Southwardly from the South line of Government Street, measured along the East line of Cherokee Street, thence Southwardly along the East line of Cherokee Street 50 feet to a point for a front, thence Eastwardly at right angles to Cherokee Street 145 feet 3 inches to a point, thence Northwardly and parallel with Cherokee Street 104 feet, more or less, to a point; thence Southwestwardly on a line parallel with Government Street to the point of beginning. ALSO, that lot of land described as commencing at a point on the East side of Cherokee Street 270 feet Northwardly from the Northeast corner of Cherokee Street and LaSalle Avenue, running thence Northwardly on the East side of Cherokee Street 14 feet 3 inches to the South line of the property hereinabove described; thence Eastwardly along said South line 145 feet3 inches to a point; thence Southwardly 14 feet 3 inches, thence Westwardly 145 feet 3 inches to the place of beginning. All of said measurements being more or less. Being the North 14 feet, 3 inches of Lot 67, Lee Place, as per plat recorded in Deed Book 132, N.S., Page 344. Being the same property described in Real Property Book 3997, Pages 0423-0424 as recorded in the Office of the Judge of Probate, Mobile County, Alabama.

Loan Number: 391000347    Servicing Number: 671167-5    Date: 07/30/02

# ADJUSTABLE RATE RIDER
## (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made July 30, 2002
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
Option One Mortgage Corporation, a California Corporation
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

255  CHEROKEE STREET,   MOBILE, AL 36606-1237

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

The Note provides for an initial interest rate of          8.990%          . The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The interest rate I will pay may change on the first day of    August          2004
and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
### (C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding
SIX AND 24/100                    percentage point(s) ( 6.240%    )
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX - Single Family
Page 1 of 3

Loan Number: 391000347        Servicing Number: 671167-5        Date: 07/30/02

be my new interest rate until the next Change Date.

    The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

    **(D) Limits on Interest Rate Changes**

    The interest rate I am required to pay at the first Change Date will not be greater than 11.990%  or less than  8.990%                    . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than      14.990%                or less than    8.990%

    **(E) Effective Date of Changes**

    My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

    **(F) Notice of Changes**

    The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Covenant 17 of the Security Instrument is amended to read as follows:

    **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

    To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

    If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Loan Number:  391000347     Servicing Number:  671167-5        Date:  07/30/02

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____(Seal)        _____(Seal)
BERNICE   MUHAMMAD

_____(Seal)        _____(Seal)

_____(Seal)        _____(Seal)

State of Alabama - Mobile County
I certify this instrument was filed on:

Wed. Aug-07-2002 @ 3:45:00PM

| | |
|---|---|
| MORTGAGE TAX | 144.00 |
| SURCHARGE | 10.00 |
| S. R. FEE | 2.00 |
| RECORDING FEE | 28.50 |
| TOTAL AMOUNT | $184.50 |

2002060777
Don Davis, Judge of Probate

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family
Page 3 of 3

USRI0023 (02-23-99)

**EXHIBIT B**

Loan Number: 391000347

Servicing Number: 671167-5

Date: 07/30/02

# ADJUSTABLE RATE NOTE
## (LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

I HEREBY CERTIFY THAT THIS IS A TRUE AND EXACT COPY OF THE ORIGINAL EXECUTED INSTRUMENT AS FILED IN THE OFFICE OF THE JUDGE OF PROBATE.
BAY TITLE INSURANCE COMPANY
CLOSING AGENT

255   CHEROKEE STREET,   MOBILE, AL 36606-1237

[Property Address]

**1.   BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $96,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is Option One Mortgage Corporation, a California Corporation I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 8.990% . The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.   PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on September 01 , 2002 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on, August 01 , 2032 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at    OPTION ONE MORTGAGE CORPORATION
DEPARTMENT 7821, LOS ANGELES, CA  90084-7821
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $771.75 . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

(D) Application of Payments

Payments received by the Note Holder will be applied in the following order: (i) prepayment charges due under this Note; (ii) amounts payable under paragraph 2 of the Security Instrument (defined below); (iii) interest due under this Note; (iv) principal due under this Note; and (v) late charges due under this Note.

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The interest rate I will pay may change on the first day of   August 01 , 2004 and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND 6/25 percentage point(s) ( 6.240% ) to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

ALABAMA ADJUSTABLE RATE NOTE-LIBOR INDEX - Single Family
Page 1 of 3

ALNT0021.wp (04-12-02)

Loan Number: 391000347          Servicing Number: 671167-5          Date: 07/30/02

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than    11.990%    or less than
8.990%    . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one
percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate
be greater than    14.990%    or less than    8.990%    .

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment
beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly
payment before the effective date of any change. The notice will include information required by law to be given me and also the
title and telephone number of a person who will answer any question I may have regarding the notice.

5.      **BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as
a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder
agrees in writing to those changes.

If within 24 Months                        from the date of execution of the Security Instrument I make a full prepayment
or, in certain cases, a partial prepayment, I will at the same time pay to the Note Holder a prepayment charge. In no event will
such a charge be made unless it is authorized by state or federal law. The prepayment charge will be equal to six (6) months
advance interest on the amount of any prepayment that, when added to all other amounts prepaid during the twelve (12) month
period immediately preceding the date of the prepayment, exceeds twenty percent (20%) of the original principal amount of this
Note.

6.      **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other
loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall
be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which
exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe
under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial
prepayment.

7.      **BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days
after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    6.000%
of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default, the
Note Holder may require me to pay immediately the full amount of principal which has not been paid and all interest that I owe
on that amount, together with any other charges that I owe under this Note or the Security Instrument, except as otherwise required
by applicable law.

**(C) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above,
the Note Holder will still have the right to do so if I am in default at a later time.

**(D) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to
be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law, whether
or not a lawsuit is filed. Those expenses include, for example, reasonable attorneys' fees.

8.      **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by
delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note
Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note
Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9.      **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made
in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note
is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety
or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights
under this Note against each person individually or against all of us together. This means that any one of us may be required to pay
all of the amounts owed under this Note.

10.     **WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor.
"Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right
to require the Note Holder to give notice to other persons that amounts due have not been paid.

ALNT6022.wp (04-12-02)

Loan Number: 391000347          Servicing Number: 671167-5          Date: 07/30/02

11.   **SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
BERNICE  MUHAMMAD               -Borrower                                          -Borrower


_____ (Seal)          _____ (Seal)
                                -Borrower                                          -Borrower


_____ (Seal)          _____ (Seal)
                                -Borrower                                          -Borrower


[Sign Original Only]

Page 3 of 3

ALNT0023.wp (04-12-02)

# EXHIBIT C

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

IN RE:                              *
                                    *          Case No.  02-14651-WSS
BERNICE MUHAMMAD                    *          Chapter 13 Proceeding
                                    *
        Debtor.                     *

### ORDER ON MOTION FOR RELIEF
### FROM THE AUTOMATIC STAY

On or about the 16th day of July, 2003, this matter came before the Court for hearing on the Motion for Relief from Automatic Stay filed by Option One Mortgage Corporation (hereinafter "Option One"). Phillip M. Leslie appeared for the Debtor and James H. Greer appeared for the Movant.

Based upon representations and Consents of counsel, the Court finds and it is **ORDERED, ADJUDGED and DECREED**, as follows:

1.  Option One's Motion for Relief from Stay is conditionally denied as to the following described real property: 255 Cherokee Street, Mobile, Alabama 36606.

2.  Option One shall be allowed to file a secured arrearage claim through July 2003 in the amount of $ 4,768.99.

3.  If the debtor fails to pay a complete monthly mortgage payment in bankable funds to Option One beginning in August 2003 by the 15th day of each month, Option One shall mail, by regular mail, a written (15) fifteen day notice of default to the debtor and debtors attorney at their addresses listed in the petition. If the default is not cured within fifteen (15) days of the letter, the automatic stay provided under 11 U.S.C. §362 will terminate automatically without further notice or Order of this court.

4.  Option One and the Debtor agree that Option One shall be allowed to contact the Debtor by telephone or in writing regarding any delinquent post petition mortgage payments, canceled insurance and/or delinquent property taxes commencing with August 2003.

Dated:   **August 11, 2003**


                                    _William S Shulman_
                                    WILLIAM S. SHULMAN
                                    CHIEF U.S. BANKRUPTCY JUDGE


ORDER PREPARED BY:
James H. Greer, Esquire pursuant to the agreement of the parties.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

In Re:                         :

BERNICE MUHAMMAD,          :  CASE NO. 02-14651-WSS

                              :

                              :  CHAPTER 13

                Debtor.    :  JUDGE: WILLIAM S. SHULMAN

## PROOF OF CLAIM

1. **CLAIMANT:**
   **PAYMENT ADDRESS**
   **OF CLAIMANT:**

   Option One Mortgage Corporation
   Option One Mortgage Corporation
   3 Ada, C 879 AM
   Irvine, CA  92618

   **LOAN NUMBER:**    **0006711675**

2. **CLASSIFICATION OF CLAIM:**    Secured to the Full Value of the Property.
   Supporting Document Attached as Exhibit "A"

3. **COLLATERAL:**    Real Estate:  Supporting Document Attached as Exhibit "A"

4. **TOTAL AMOUNT OF CLAIM:**               **$100,961.42**
   (Includes principal balance of $ 95,678.74, interest from date of default, late charges, fees & costs.)

5. ARREARAGES TO BE PAID UNDER THE PLAN PER ORDER ENTERED AUGUST 11, 2003:

| | | | | |
|---|---|---|---|---|
| 5 | Payments (3/1/2003 - 7/1/2003) | @ | $ 771.75 | $ 3,858.75 |
| 4 | Late charges | @ | 46.31 | 185.24 |
| | BK Attorney Fees & Cost per order | | | 725.00 |

          **TOTAL ARREARS**                      $ 4,768.99

          **TOTAL ARREARS AND INTEREST TO BE**
          **PAID UNDER THE PLAN**           $ 4,768.99

The amount of all payments in this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor, if any.

This the 9th day of September, 2003

James H. Greer, AL Bar No. ASB-2693-E65J
Key, Greer, Frawley, Key & Harrison
Local Alabama Counsel
Post Office Box 360345, Birmingham, AL 35236
(205) 987-2211

226.0302927AL / ln #0006711675



# EXHIBIT D

 

*2850*

July 15, 2004


BERNICE MUHAMMAD
255 CHEROKEE ST.
MOBILE, AL 36606
Attn:


In Re: Debtor: MUHAMMAD
       Case No.: 02-14651
       Loan No.: 0006711675

To whom it may concern:

Attached is check number 0249 for $771.95.  We are unable to
accept and apply these funds to the above-referenced loan number as
OOMC was granted relief from the automatic stay on this case.


If you have any questions regarding this matter, please contact Option
One at the toll free number, 1-888-355-7305,                Monday
through Friday, from 7:00 am to 5:00 pm, PST.

Sincerely,


Nick Estrada
Bankruptcy Department

Please be advised that Option One Mortgage Corporation is a debt
collector.  This does not imply that Option One is attempting to collect
money from anyone active in bankruptcy or from anyone whose debt has
been discharged under the bankruptcy laws of the United States.

BK018 010 NE2

EXHIBIT

*I*

**REID & ASSOCIATES** *#-0006711675*
5012 Virginia Cir
Tuscaloosa, AL 35401
251-709-1865

0249

61-1/620

6/25/04 DATE

PAY TO THE
ORDER OF _O_tia_ On_ $ 771.95

_Seren   Hundred   Sevent One   95/_ DOLLARS

**AmSouth** BANK
THE RELATIONSHIP PEOPLE

FOR _255 Cherokee St. Barnes Mohamed_

⑈000249⑈ ⑊062000019⑊ 0033772525⑈

MP

EXHIBIT

**EXHIBIT E**

# IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

In Re:                                   )

BERNICE MUHAMMAD,                        )

Debtor.                       ) 02-14651

---

## ORDER

---

This matter being before the court on October 20, 2004, on **"DEBTOR'S EMERGENCY MOTION TO ENJOIN OPTION ONE MORTGAGE FROM FORECLOSING MORTGAGE ON DEBTOR'S HOMEPLACE, OR, IN THE ALTERNATIVE, MOTION TO DISMISS DEBTOR'S CHAPTER 13 WITHOUT AN INJUNCTION"**, and respective counsel for Debtor and Option One Mortgage being present and a proffer by Debtor's attorney having been made to the court regarding this matter, and counsel for Option One Mortgage having made an appropriate objection and the court having overruled said objection, it is, therefore,

ORDERED, ADJUDGED and DECREED that the Debtor's chapter 13 is hereby dismissed in its entirety effective at the close of business on October 20, 2004, without the benefit of any injunction whatsoever.

Dated:    October 28, 2004

*William S Shulman*

**WILLIAM S. SHULMAN**
**CHIEF U.S. BANKRUPTCY JUDGE**

-1-

**EXHIBIT F**

## Statement of Pre-Petition Arrears

11/12/2004

**Debtor(s) Name:** BERNICE MUHAMMAD

**Servicer:** Option One Mortgage Corporation

**Court Case #:** 04-16354
**Chapter #:** 13

**Servicer Loan #:** XXXXXX1675

| Total Pre-Petition Arrears | $14,900.47 |
| --- | --- |

### Itemized Statement of Arrears

| From | To | Type of Charge | Units | Amount | Total |
| --- | --- | --- | --- | --- | --- |
| 1/1/2004 | 11/1/2004 | Payments | 11 | $771.75 | $8,489.25 |
| | | Payment Late Charges | 14 | $46.31 | $648.34 |
| | | BPO Fee | 1 | $115.00 | $115.00 |
| | | Foreclosure Fees & Costs | 1 | $2,154.36 | $2,154.36 |
| | | NSF Fees | 1 | $56.00 | $56.00 |
| | | Attorneys Fees and Costs (Prior Bankruptcies) | 1 | $777.58 | $777.58 |
| | | Escrow Shortage | 1 | $2,576.94 | $2,576.94 |
| | | Property Inspection Fee | 1 | $82.80 | $82.80 |
| | | Suspense Balance | 1 | $0.20 | $0.20 |

EXHIBIT
I



**EXHIBIT G**



**OPTION ONE**
M O R T G A G E

*One gets it done:*

**H&R BLOCK**
mortgage

ATTORNEY CONSENT

To: Option One Mortgage Corporation
    BK-Borrower's Assistance Team
    Fax Number 866-400-3545


Re: Debtor(s) : Bernice.Muhammad
    Bankruptcy Case No: 04-16354
    Creditor   : Option One Mortgage Corporation
    Account No.: 0006711675

In my capacity as counsel for the above-referenced debtor(s) in the
above-referenced bankruptcy case, I hereby authorize Option One
Mortgage Corporation, by its agents, to communicate directly with
the debtor(s), with such communications restricted to the subject
matter of a workout or loss mitigation alternative with respect to
the above-referenced Account Number.  In authorizing the same, it is
understood that Option One Mortgage, et al. shall not communicate
with the debtor on any other issue.

CONSENTED TO:

Date: _____          _____
                                     Counsel for Debtor

Debtor(s) can be reached at the following telephone number:

        Day: _____ __ ___

    Evening: _____ _____ .

                    -OR-

____  Although my client is interested in the loss mitigation
      alternatives, I would prefer that all related communications be
      directed through my office.  Attorney initials _____

____  I have spoken with my client, and we are not interested in
      pursuing a loss mitigation alternative.  Attorney initials _____

BK005 010 DD0



**OPTION ONE**
M O R T G A G E

*One gets it done.*

**H&R BLOCK**
mortgage

August 07, 2006


Phillip M. Leslie
2259 Costarides St.
Mobile,AL,36617-2443


RE: WORKOUT OPTIONS FOR BORROWERS IN BANKRUPTCY

Creditor:  Option One Mortgage Corporation
Debtor(s): Bernice Muhammad
Bankruptcy Case No.: 04-16354
Creditor Account No.: 0006711675
Property Address: 255 Cherokee St
                  Mobile AL 36606

Dear Phillip M. Leslie:

We are aware that your client has filed for bankruptcy protection.
Whether your client intends to keep or surrender the above-referenced
property, there may be more preferable or flexible options for him or
her to consider when compared with those traditionally available
under the bankruptcy law.  All workout review options are obviously
contingent upon your approval and that of the trustee and the bankruptcy
court.  These options include the following:

-If your client wishes to keep the property, but is suffering through or
emerging from a hardship, available options may include modifying the
loan, which could involve recapitalizing the delinquent mortgage payments
extending the maturity date, and/or reducing the interest rate if
permitted by the investor.
-If your client cannot afford to retain the property, another potential
option is the sale of the property.  In situations where the value of
the property does not exceed the outstanding debt, compromises may
sometimes be made to facilitate a sale of the property at the fair market
value with liability for the shortfall forgiven.
-Should a situation arise where your client can neither afford to keep
the property, nor has he or she been able to sell it at fair market
value, and there are no junior encumbrances, the investor may possibly
accept a Deed in Lieu of Foreclosure.

We want to help homeowners, who, like your client, have encountered
financial difficulty.  We request that you consult your client regarding
these alternatives.  Enclosed are a blank Financial Statement and a
Workout Questionnaire for Borrowers in Bankruptcy for your client's
completion.  If your client wishes to pursue one of the above options,
please have the enclosed financial statement and questionnaire completed
and returned to the below referenced fax number or address.  Please

**AUG 1 4 2006**

Page 1 of 2







include with them copies of:

-Most recent pay stubs/bank statements for all borrowers listed on the loan documents (if self employed, a profit and loss statement)
-A brief statement describing your client's current financial situation.

This information will help our company to determine whether your client qualifies for the option requested or if others are available.  If your client is trying to sell the property, please also include copies of the listing agreement, appraisals, offer, estimated HUD-1 and any other relevant documents.  In addition, we request that you fax and/or mail a copy of the Chapter 13 plan (if applicable) and schedules A, D, I, & J, as this will expedite the review process.  Please note that no action can be taken on any option your client may desire to pursue until all the above-requested information has been received.  Please mail or fax to Attention: BK-Borrower's Assistance Team, Fax: 866-809-5963 Mail: 4600 Touchton Rd. East  Bldg. 200 Ste 102  Jacksonville, Fl 32246

Additionally, in order to expedite matters, we have enclosed a consent form for you regarding future communication on this matter, authorizing us to communicate directly with your client regarding the subject matter of this letter.  Kindly review the same, and if it is acceptable, please execute and fax or mail it back to our office at the above-referenced address and fax number.

If you have any questions or wish to discuss these or any other opportunities, please feel free to contact our BK-Borrowers Assistance Team at 888-275-2648 ext. 61093.

Very truly yours,

Deloris Davis
BK- BAT Loan Consultant

### Attention

Please be aware that exploration of the above-referenced options does not dispense with the requirement that ongoing mortgage and/or plan payments be made throughout the process.  Option One reserves the right to take all actions permitted by law to protect its rights independent of this offer.  We cannot guarantee approval by the trustee, court or the investor on the account of any particular option, or predict any possible tax consequences.  However, should an agreement be reached between your client and Option One regarding a particular option, we expect that you and your client will assist in obtaining any necessary investor, trustee and/or court approval to implement it.

### Special Notice

In the event that the Federal Fair Debt Collection Act applies to this communication, we are required to inform you that this communication is from a debt collector.

Page 2 of 2
BK055 017 DD0



BERNICE MUHAMMAD
255 CHEROKEE ST
MOBILE, AL 36606
October 5, 2006

RE: WORKOUT OPTIONS FOR BORROWERS IN
    BANKRUPTCY.

Creditor: Option One Mortgage Corporation
Creditor Account No.: 0006711675


Dear Option One Mortgage

I, Bernice Muhammad intend to keep my property, and to look at flexible options that I may consider. The hardship That I am emerging from is the back to back (Hurricanes in 2004 &2005), I am a vocalist and work touring the world, and could not move at all after Katrina hit, there was much damage and I had to protect the property as best I could.

There was so much damage that was not covered by the insurance, and I had to pay out money that I never recovered and that in it self hurt me very bad. I was still suffering from (Hurricane Ivan) when Katrina hit, and in order for me to live in the home I actually had to repair the home and that meant I could not work. I turned down tours because the property was not safe and had much damage. It is important for you to understand that this replacement coverage did not kick in from the insurance company until

October 05, and that was just the inspection of the damage property.

The set back was and is a loss to me, and yes I need help with my financial difficulty, the bankruptcy dept. said Option One would place the missed payments in the back of the loan if I was having trouble because of the hurricane. I do feel I need to modify the loan that could recapitalize the delinquent mortgage payments extending the maturity date, and reducing the interest rate if permitted by the investor. In August 30, 2005 I called the bankruptcy department to find out what was going to happen if I could not make payment in September because I knew it would not be anytime soon. I had paid August, September was now on me and I could not leave home to work, I was in a hurricane repair, and the damages were great and there's still more needed things to be looked after.

The payments that were made in November 04 to August 05 are not being credited to my mortgage payments, this situation needs to be looked into, this is causing an outstanding debt obviously and some of the hardship. In situations where the payments are not reported it shows a liability on Option One and it must review mortgage payments of the borrower and adjust the payments, this involves (10) months of payments that are not reported.

All of the options sound good and the bankruptcy is being paid, but the interest and delinquent and late payments fee on payments that have been paid are not fair to the borrower and needs to be addressed, and the right amount

of money can go into an option that can be workout. There are several discrepancies in the communication I received concerning the amount owed. I am attaching some of the letters so that you can see the variances in dates and amounts due. There is a concern about the interest being charged for the payoff.

Thank you
Ms. Muhammad

*Bernie Muhammad*

10-5-06




**OPTION ONE**
M O R T G A G E
an H&R BLOCK company

WORKOUT QUESTIONNAIRE FOR BORROWERS IN BANKRUPTCY

Bankruptcy Case Number:_____

To: Option One Mortgage Corporation
    BK-Borrower's Assistance Team
    Fax Number 866-400-3545

I am interested in the following option:

_____ Repayment Plan (I would agree to repay the existing delinquency
      within 6 months or less - Document Financial
      Information is not required).

✓ Loan Modification (I desire to keep my home and request that the
      past due amount owed be capitalized).

_____ Sale (I would agree to sell the property at fair market value
      even if the proceeds are not sufficient to pay off the account
      in full, to avoid a foreclosure).

_____ Deed-in-Lieu-of-Foreclosure (I cannot sell the property or
      afford to keep it, but there are no junior liens and I am willing
      to deed the property to the Servicer to avoid a foreclosure).

The following explains my current situation:

  1. I fell behind in my mortgage payments because:

     BACK TO BACK HURRICANES

  2. My income and/or expenses have changed since filing bankruptcy
     as follows:

  3. I am requesting a loan modification and am able to make the
     following cash contribution to pay down outstanding fees and
     costs and/or payments (this sum would be applied towards the
     modification or repayment agreement if and when approved):

  4. If my workout option is approved, and I am in a Chapter 13
     bankruptcy, I will most likely (a) convert to a Chapter 7,
     (b) dismiss my case or (c) remain in the bankruptcy to pay
     my second secured creditors. (Please circle one)

BEFORE FAXING THIS QUESTIONNAIRE, PLEASE BE CERTAIN THE FOLLOWING
IS INCLUDED:

(Exception-information below not required for repayment plan or if
in a Chapter 7 and requesting a short sale or deed in lieu):

Page 1 of 2





___ Complete Financial Statement
___ Current Pay stub (all borrowers)
___ Most recent bank statements (checking and savings);
___ Evidence of assistance from family members, if applicable

### Attention

Please be aware that exploration of the above-referenced options does not dispense with the requirement that ongoing mortgage and/or plan payments be made throughout the process.  Option One reserves the right to take all actions permitted by law to protect its rights independent of this offer.  We cannot guarantee approval by the trustee, court or the investor on the account of any particular option, or predict any possible tax consequences.  However, should an agreement be reached between your client and Option One regarding a particular option, we expect that you and your client will assist in obtaining any necessary investor, trustee and/or court approval to implement it.

### Special Notice

In the event that the Federal Fair Debt Collection Act applies to this communication, we are required to inform you that this communication is from a debt collector.

Page 2 of 2
BK007 015 DD0



# FINANCIALSTATEMENT

| Loan #: | | |
|---|---|---|
| Borrower: BERNICE MUHAMMAD | Res. Tel. #: 251-476-1787 | Work Tel. #: |
| Social Security Number: 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 | | |
| Co-Borrower: | Res. Tel. #: | Work Tel. #: |
| Social Security Number: | | |

Property Address: 255 CHEROKEE ST.

| City: MOBILE | State: AL | Zip Code: 36606 |
|---|---|---|

Current Address (if different from property address – Do not use Post Office Box):

| City: | State: | Zip Code: |
|---|---|---|

Total number of dependents: 1

Have you contacted credit-counseling services? NO

Is your home listed for sale? NO

If yes, who is your agent?

| Borrower Employment History | | | Co-Borrower Employment History | | |
|---|---|---|---|---|---|
| Currently Employed? ☑ Yes ☐ No | | | Currently Employed? ☐ Yes ☐ No | | |
| How Long?: 15 YRS. | | | How Long?: | | |
| Present Employer: | | | Present Employer: | | |
| Position/Title: | | | Position/Title: | | |
| If self-employed, name of co.: Resio y Assoc (Vocrust) | | | If self-employed, name of co.: | | |

| Description | Monthly Income | | Total |
|---|---|---|---|
| | Borrower | Co-Borrower | |
| Social Security Number: | 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 | | |
| Net Salary/Wages | $ | $ | $ |
| Unemployment Income | $ | $ | $ |
| Child Support/Alimony | $ 1,000 — | $ | $ 1,000 — |
| Disability Income | $ | $ | $ |
| Rental Income | $ | $ | $ |
| (ST/DISA (Vore) | $ 800 — | | 1,800 — |

## Assets/Liabilities — If you own real estate in addition to your personal residence, please attach a complete list of property addresses / name(s) of Lender / Lender's address and phone number / account numbers / monthly payment / amount owed / estimated value & rental income.

| Description | Estimated Value | Amount Owed | Net Value |
|---|---|---|---|
| Personal Residence | $ 145K | $ 95K | $ 50K |
| Personal Property | $ 40K | $ | $ 40K |
| Checking Accounts | $ — | $ | $ — |
| Savings Accounts | $ — | $ | $ — |
| IRA/401K/Keogh Accounts | $ — | $ | $ — |
| Stocks/Bonds/CD's | $ — | $ | $ — |
| Cash Value of Life Insurance | $ — | $ | $ — |
| Other | $ | $ | $ |

| | Totals | $ | | $ | | $ |
|---|---|---|---|---|---|---|

## Expenses

| Description | Monthly Payment | Balance Due | Delinquent | Yes | No |
|---|---|---|---|---|---|
| Other Mortgages/Liens/Rents | $ 781 | $ | | | |
| Alimony/Child Support | $ — | $ | | | |
| Homeowners Assoc. Dues | $ — | $ | | | |
| Child Care | $ — | $ | | | |
| Health Insurance | $ 63 | $ | | | ☑ |
| Medical | $ — | $ | | | |
| Credit Card/Installment Loans | $ — | $ | | | |
| Auto Loan(s) | $ — | $ | | | |
| Auto Expenses/Gasoline/Insurance | $ | $ | | | |
| Food/Spending Money | $ 375 | $ | | | ☑ |
| Water/Sewer/Utilities/Phone | $ 424 | $ | | | ☑ |
| Other BANKRUPTCY | $ 200 — | $ | | | ☑ |
| CLEANING | 194 — | | | | |

## Borrower(s) Financial Hardship

### (Reason for Delinquency/Inability to Satisfy Mortgage Obligation)

SEE ATTACHMENT

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

I/we obtained a mortgage loan secured by the above-described property. I/we have described my/our present financial condition and reason for default on this financial analysis form and have attached required documentation. Under my/our present circumstances, I/we cannot bring my/our mortgage loan current. Therefore, I/we hereby request assistance under Option One's loss mitigation program.

If my/our lender and/or servicer determine that the information and/or documentation provided by me/us with this financial analysis form is incomplete, or insufficient to render a decision as to my/our eligibility for a loss mitigation workout, my/our request for a loss mitigation workout may be denied or delayed until I/we have provided the lender and/or servicer with additional information and/or documentation as requested by them. If any information and/or documentation has been misrepresented by me/us, I/we understand and agree that such misrepresentation will be grounds either for immediate rejection of my/our request for assistance or immediate termination of any loss mitigation workout agreed to by the lender and/or servicer. Furthermore, I/we shall be liable for any losses or damages suffered by the lender and/or servicer as a result of such misrepresentation.

By signing below, I/we certify that the information and documentation provided is true and correct to the best of my/our knowledge. In the event a third party is designated to act on my/our behalf, I/we have included written authorization to the designee to act on my/our behalf.

In the event I/we am/are able to bring the loan current or are able to sell the property for an amount sufficient to pay off my/our mortgage loan in full during the evaluation process, I/we understand that my/our request for participation in Option One's loss mitigation program will be withdrawn without further action.

Submitted this ___5th___ day of __Oct_____, __06___.

_____                                    Signature

of Borrower    Date

_____
Signature of Borrower                                            Date


### R E M I N D E R


Before mailing, make sure you have signed and dated this form. Include copies of your last two months pay stubs, and bank statements of your checking and/or savings accounts. If you are self-employed, attach a copy of the past six-month's profit and loss statement along with your most recent Federal Tax returns. If property is Income/Rental property, please provide a copy of the current Lease Agreement(s).

8:34 AM
10/04/06
Accrual Basis

# KARMILLA ALI
# Profit & Loss
## January 2006

|  | Jan 06 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| Performance Income | 475.00 |
| **Total Income** | 475.00 |
| **Gross Profit** | 475.00 |
| **Net Ordinary Income** | 475.00 |
| **Net Income** | 475.00 |

8:35 AM

10/04/06

Accrual Basis

# KARMILLA ALI
## Profit & Loss
### February 2006

|  | Feb 06 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| Performance Income | 400.00 |
| **Total Income** | 400.00 |
| **Gross Profit** | 400.00 |
| **Net Ordinary Income** | 400.00 |
| **Net Income** | 400.00 |

8:38 AM

10/04/06
Accrual Basis

# KARMILLA ALI
# Profit & Loss
## March 2006

| | Mar 06 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| Performance Income | 1,100.00 |
| **Total Income** | 1,100.00 |
| **Gross Profit** | 1,100.00 |
| **Expense** | |
| Musicians | 400.00 |
| **Total Expense** | 400.00 |
| **Net Ordinary Income** | 700.00 |
| **Net Income** | 700.00 |

8:39 AM
10/04/06
Accrual Basis

# KARMILLA ALI
# Profit & Loss
### April 2006

|  | Apr 06 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| C.D. Income | 50.00 |
| Performance Income | 800.00 |
| **Total Income** | 850.00 |
| **Gross Profit** | 850.00 |
| **Expense** | |
| Musicians | 300.00 |
| **Total Expense** | 300.00 |
| **Net Ordinary Income** | 550.00 |
| **Net Income** | 550.00 |

8:40 AM

10/04/06

Accrual Basis

# KARMILLA ALI
# Profit & Loss
## May 2006

|  | May 06 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| Performance Income | 4,600.00 |
| **Total Income** | 4,600.00 |
| **Gross Profit** | 4,600.00 |
| **Expense** | |
| Agent Fee | 460.00 |
| Musicians | 3,000.00 |
| **Total Expense** | 3,460.00 |
| **Net Ordinary Income** | 1,140.00 |
| **Net Income** | 1,140.00 |

8:40 AM

10/04/06

Accrual Basis

# KARMILLA ALI
# Profit & Loss
## June 2006

|  | Jun 06 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| Performance Income | 13,800.00 |
| **Total Income** | 13,800.00 |
| **Gross Profit** | 13,800.00 |
| **Expense** | |
| Agent Fee | 1,380.00 |
| Musicians | 9,000.00 |
| **Total Expense** | 10,380.00 |
| **Net Ordinary Income** | 3,420.00 |
| **Net Income** | 3,420.00 |

8:41 AM

10/04/06

Accrual Basis

# KARMILLA ALI
# Profit & Loss
## July 2006

|  | Jul 06 |
|---|---|
| Net Income | 0.00 |

8:41 AM
10/04/06
Accrual Basis

# KARMILLA ALI
## Profit & Loss
### August 2006

|  | Aug 06 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| Performance Income | 1,200.00 |
| **Total Income** | 1,200.00 |
| **Gross Profit** | 1,200.00 |
| **Expense** | |
| Music Supplies | 0.00 |
| Musicians | 600.00 |
| **Total Expense** | 600.00 |
| **Net Ordinary Income** | 600.00 |
| **Net Income** | 600.00 |

*Law Office Of*
*Phillip M. Leslie, P. C.*
*Attorney & Counsellor At Law*
*2259 Costarides Street, Mobile, Alabama 36617*
*e-mail address: pmleslie58@bellsouth.net*

**Telephone**
(251) 476-0293

**Facsimile**
(251) 476-0294

August 15, 2006

Ms. Bernice Muhammad
255 Cherokee Street
Mobile, AL 36605

**Re:   *Workout Options***

Dear Ms. Muhammad:

Enclosed is a letter from Option One Mortgage indicating that it has workout options you may consider.  Please read the enclosed documents carefully.  If you choose to workout this matter with Option One please complete the enclosed documents and return them to my office.

If you have questions please contact my office.

Sincerely,

PHILLIP M. LESLIE, P. C.

BY: _____
PHILLIP M. LESLIE

PML/mgc
Enclosures



**OPTION ONE**
M O R T G A G E

*One gets it done:*

**H&R BLOCK**
mortgage

August 07, 2006

Phillip M. Leslie
2259 Costarides St.
Mobile,AL,36617-2443

      RE: WORKOUT OPTIONS FOR BORROWERS IN BANKRUPTCY

      Creditor:  Option One Mortgage Corporation
      Debtor(s): Bernice Muhammad
      Bankruptcy Case No.: 04-16354
      Creditor Account No.: 0006711675
      Property Address: 255 Cherokee St
                    Mobile AL 36606

Dear Phillip M. Leslie:

We are aware that your client has filed for bankruptcy protection.
Whether your client intends to keep or surrender the above-referenced
property, there may be more preferable or flexible options for him or
her to consider when compared with those traditionally available
under the bankruptcy law.  All workout review options are obviously
contingent upon your approval and that of the trustee and the bankruptcy
court.  These options include the following:

-If your client wishes to keep the property, but is suffering through or
emerging from a hardship, available options may include modifying the
loan, which could involve recapitalizing the delinquent mortgage payments
extending the maturity date, and/or reducing the interest rate if
permitted by the investor.
-If your client cannot afford to retain the property, another potential
option is the sale of the property.  In situations where the value of
the property does not exceed the outstanding debt, compromises may
sometimes be made to facilitate a sale of the property at the fair market
value with liability for the shortfall forgiven.
-Should a situation arise where your client can neither afford to keep
the property, nor has he or she been able to sell it at fair market
value, and there are no junior encumbrances, the investor may possibly
accept a Deed in Lieu of Foreclosure.

We want to help homeowners, who, like your client, have encountered
financial difficulty.  We request that you consult your client regarding
these alternatives.  Enclosed are a blank Financial Statement and a
Workout Questionnaire for Borrowers in Bankruptcy for your client's
completion.  If your client wishes to pursue one of the above options,
please have the enclosed financial statement and questionnaire completed
and returned to the below referenced fax number or address.  Please

Page 1 of 2

AUG 1 4 2006

**EXHIBIT H**



**OPTION ONE**
M O R T G A G E
an H&R BLOCK company

H&R BLOCK

April 12, 2007

001276/BK013/647

PHILLIP M LESLIE
2259 COSTARIDES STREET
MOBILE, AL 36617

<u>RE: WORKOUT OPTIONS FOR BORROWERS IN BANKRUPTCY</u>

    Creditor:  Option One Mortgage Corporation
    Debtor(s): Bernice Muhammad
    Bankruptcy Case No.: 04-16354
    Creditor Account No.: 0006711675
    Property Address: 255 Cherokee St
                Mobile AL 36606        APR 1 8 2007

Dear PHILLIP M LESLIE :

We are aware that your client has filed for bankruptcy protection.
Whether your client intends to keep or surrender the above-referenced
property, there may be more preferable or flexible options for him or
her to consider when compared with those traditionally available
under the bankruptcy law.  All workout review options are obviously
contingent upon your approval and that of the trustee and the bankruptcy
court.  These options include the following:

-If your client wishes to keep the property, but is suffering through or
emerging from a hardship, available options may include modifying the
loan, which could involve recapitalizing the delinquent mortgage payments
extending the maturity date, and/or reducing the interest rate if
permitted by the investor.
-If your client cannot afford to retain the property, another potential
option is the sale of the property.  In situations where the value of
the property does not exceed the outstanding debt, compromises may
sometimes be made to facilitate a sale of the property at the fair market
value with liability for the shortfall forgiven.
-Should a situation arise where your client can neither afford to keep
the property, nor has he or she been able to sell it at fair market
value, and there are no junior encumbrances, the investor may possibly
accept a Deed in Lieu of Foreclosure.

We want to help homeowners, who, like your client, have encountered
financial difficulty.  We request that you consult your client regarding
these alternatives.  Enclosed are a blank Financial Statement and a
Workout Questionnaire for Borrowers in Bankruptcy for your client's
completion.  If your client wishes to pursue one of the above options,

# EXHIBIT
## B

please have the enclosed financial statement and questionnaire completed and returned to the below referenced fax number or address.  Please include with them copies of:

-Most recent pay stubs/bank statements for all borrowers listed on the loan documents (if self employed, a profit and loss statement)
-A brief statement describing your client's current financial situation.

This information will help our company to determine whether your client qualifies for the option requested or if others are available.  If your client is trying to sell the property, please also include copies of the listing agreement, appraisals, offer, estimated HUD-1 and any other relevant documents.  In addition, we request that you fax and/or mail a copy of the Chapter 13 plan (if applicable) and schedules A, D, I, & J, as this will expedite the review process.  Please note that no action can be taken on any option your client may desire to pursue until all the above-requested information has been received.  Please mail or fax to Attention: BK-Borrower's Assistance Team, Fax: 334-476-0293  Mail: 4600 Touchton Rd. East  Bldg. 200 Ste. 102  Jacksonville, FL 32246

Additionally, in order to expedite matters, we have enclosed a consent form for you regarding future communication on this matter, authorizing us to communicate directly with your client regarding the subject matter of this letter.  Kindly review the same, and if it is acceptable, please execute and fax or mail it back to our office at the above-referenced address and fax number.

If you have any questions or wish to discuss these or any other opportunities, please feel free to contact our BK-Borrowers Assistance Team at 888-275-2648 ext. 61093.

Very truly yours,

Wanda Williams
BK- BAT Loan Consultant

## Attention

Please be aware that exploration of the above-referenced options does not dispense with the requirement that ongoing mortgage and/or plan payments be made throughout the process.  Option One reserves the right to take all actions permitted by law to protect its rights independent of this offer.  We cannot guarantee approval by the trustee, court or the investor on the account of any particular option, or predict any possible tax consequences.  However, should an agreement be reached between your client and Option One regarding a particular option, we expect that you and your client will assist in obtaining any necessary investor, trustee and/or court approval to implement it.

## Special Notice

In the event that the Federal Fair Debt Collection Act applies to this communication, we are required to inform you that this communication is from a debt collector.

Page 2 of 2
BK013 022 WW2

**EXHIBIT I**

Process Management Note Print Preview

Page 1 of 1



Process Management Notes :: Loan # 0006711675
Printed: 11/13/2007 10:22:40 AM, Katherine Blackwell
View: Single Note

1.

Written By: Christina Velasco, Fidelity
Date: 11/9/2007 8:57:00 AM
Type: Issue
Process: BK_Payoff
Borrower: MUHAMMAD
Note:
System updated for the following event: User has ended the Issue associated with this loan. Issue Type: BK Post Petition Status. Comments: Loan is post due for 01/01/06 through 08/01/06 iao $839.09 each;09/01/06 through 02/01/07 iao $967.00 each;03/01/07 through 08/01/07 iao $949.84 each; 09/01/07 through 11/01/07 iao $958.34 each . Late charges of $50.35 each. Debtor suspense of $572.71. No future payment changes listed. Thanks.

```
1/06 - 8/06  - 839.09 =     8 X 839.09 - 6,712.72
9/06 - 2/1/07  967.00 =     6 X 967.00 - 5,802.00
3/07 - 8/07   949.84 =      6 X 949.84 - 5,699.04
  9/07 . 11/07  958.34 =     3 X 958.34 - 2,875.02
  23 X 50.35 (Late fee)
                                          21,088.78
                                           1,158.05  Late fees
                                          22,246.83
                                        -    572.71 - Suspense
                                          21,674.12
                                             800.00
                                          22,474.12
```

Scott,
I have added
+ this is what I
got.





**Borrower Information:**
BERNICE MUHAMMAD
255 CHEROKEE ST
MOBILE, Alabama 36606

**Intercom Message :: Client Ref # 0006711675 :: Vendor Ref # 0006711675**

| | |
|---|---|
| **From:** | Ockwig, James |
| **To:** | Blackwell, Katherine(at-shum) |
| **CC:** | |
| **Date:** | 11/19/2007 12:16:00 PM |
| **Subject:** | Issue Request |

| | |
|---|---|
| **Type:** | Stop/Hold Action |
| **Message:** | |

Your issue for this file has been closed for the following reason: The payment amount from 10/05 thru 01/06 is $839.09, consisting of P&I only. Thank you.

**EXHIBIT J**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF ALABAMA

In re:

BERNICE MUHAMMAD                    Case No. 04-16354-WSS-13

     Debtor.

### ORDER

    This matter is before the Court on the motion of the Chapter 13 Trustee to dismiss this

case for failure to make plan payments.  Appearances were noted in the record and the Court

having heard the arguments of the parties, it is

    ORDERED that the Debtor's Chapter 13 case is DISMISSED and the Debtor is enjoined

from filing another case under the provisions of the Bankruptcy Code for a period of 120 days

from the date of this order.

Dated:   December 29, 2008

WILLIAM S. SHULMAN
CHIEF U.S. BANKRUPTCY JUDGE

# EXHIBIT K

# JOHNSON & FREEDMAN, LLC

ATTORNEYS AND COUNSELORS AT LAW
1587 NORTHEAST EXPRESSWAY
ATLANTA, GA  30329
(770) 234-9181
FAX (770) 234-9192

January 2, 2009

Bernice Muhammad
255 Cherokee Street
Mobile, AL  36606

0302927AL  02/09 CXJ

W
d
**RE:**

| | |
|---|---|
| **MSP File No.** | **226.0302927AL/CXJ** |
| **Lender's Loan No.:** | **0006711675** |
| **Name Per Client:** | **Bernice Muhammad** |
| **Unpaid Principal Balance:** | **$ 94,110.96** |
| **Property Address:** | **255 Cherokee Street** |
| | **Mobile, AL  36606** |

Dear Sir and/or Madam:

### *NOTICE PURSUANT TO FAIR DEBT COLLECTION PRACTICES ACT 15 USC 1692.*

This law firm represents American Home Mortgage Servicing, Inc., the creditor on the above-referenced loan. This letter is to advise you that we have been retained to collect the loan secured by the above-referenced property, which may involve foreclosure proceedings against said property. *The total amount of the debt owed to the creditor consists of the above-referenced unpaid principal balance, any unpaid accrued interest, escrow/impound shortages or credits, late charges, legal fees/costs, and miscellaneous charges. As of the date of this letter you owe $140,099.58. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence if you pay this amount, an adjustment may be necessary after we receive your payment, in which event we will inform you before depositing the payment for collection. For further information and/or assistance as to the total current amount needed to either bring your loan current or to pay off your loan in full contact Lashun Palmer (ext. 1613 ) at our offices. We can also provide you with information as to alternatives to avoid foreclosure.*

Unless you notify us within thirty (30) days after receipt of this letter that the validity of this debt, or any portion of it, is disputed, we will assume that the debt is valid. If you notify us in writing of a dispute, we will obtain verification of the debt and mail it to you. If the creditor named in this letter is not the original creditor, and you make a written request to this law firm within thirty (30) days from receipt of this notice, then the name and address of the original creditor will be mailed to you by this law firm. We may commence the foreclosure action without waiting thirty (30) days, if so requested by our client. If you have received a discharge in a Chapter 7 bankruptcy, please be advised that these notices are required for foreclosures in this state.

If you are currently or have within the last nine (9) months been in the military service AND joined after signing the Security Deed now in foreclosure, please notify this office immediately.  You may be entitled to relief under the Servicemembers Civil Relief Act.  When contacting this office as to your military service, you must provide us with positive proof as to your military status.  If you do not provide this information, we will assume that you are not entitled to protection under the above mentioned Act.

This letter is an attempt to collect a debt and any information obtained by virtue of it will be used for that purpose.  For further information about this matter you may contact this office at the number above.

BE GOVERNED ACCORDINGLY.

Sincerely,
**Johnson & Freedman, LLC**
Chiquita Jones
Legal Assistant

# EXHIBIT L

 **CREOLA G. RUFFIN, Attorney at Law**

605 St. Francis Street
Post Office Box 40404
Mobile, Alabama 36640

Phone (251) 432-8343
Fax (251) 432-8340

January 14, 2009

Chiquita Jones
Legal Assistant
Johnson & Freedman, LLC
Attorneys and Counselors at Law
1587 Northeast Expressway
Atlanta, GA  30329

RE:    MSP Fline No.:              226.0302927AL/CXJ
       Lender's Loan No.:          0006711675
       Our Client:                 Bernice Muhammad
       Unpaid Principal Balance:   $94,110.96
       Property Address:           255 Cherokee Street
                                   Mobile, Alabama 36606

Dear Ms. Jones:

This law office has been retained by Ms. Bernice Muhammad to look into the above listed matter. Ms. Muhammad disputes the amount of this debt. We are requesting a detailed written verification of this debt.

We look to hear from you soon.

Sincerely,

Creola G. Ruffin
Attorney at Law

CGR/dka

**EXHIBIT M**

# JOHNSON & FREEDMAN, LLC
## ATTORNEYS AND COUNSELORS AT LAW
1587 NORTHEAST EXPRESSWAY
ATLANTA, GA  30329
(770) 234-9181
FAX (770) 234-9192

**VIA CERTIFIED MAIL 7008 1300 0000 9023 4274**
**RETURN RECEIPT REQUESTED**
**Copy Via Regular Mail**

January 6, 2009

Bernice Muhammad
255 Cherokee Street
Mobile, AL  36606

0302927AL  02/09 CXJ

---

Re:  **Notice of Acceleration and Foreclosure; Note and Security Deed from Bernice Muhammad, a single woman to Option One Mortgage Corporation, A California Corporation**

| | |
|---|---|
| **MSP File No.** | **226.0302927AL** |
| **Lender's Loan No.:** | **0006711675** |
| **Name Per Client:** | **Bernice Muhammad** |
| **Property Address:** | **255 Cherokee Street** |
| | **Mobile, AL  36606** |
| **Unpaid Principal Balance:** | **$ 94,110.96** |

Dear Sir/Madam:

This law firm represents HSBC Bank USA, National Association as Trustee for Merrill Lynch Mortgage Investors, Inc. Mortgage Loan Asset-Backed Certificates, Series 2002-HE1, the creditor to whom the above-referenced debt is owed.  This letter is to advise you that we have been retained to institute foreclosure proceedings against the referenced property.  Enclosed you will find a copy of the Notice of Mortgage Foreclosure Sale that was submitted for publication in the legal newspaper in the county where the property is located.  The foreclosure sale is scheduled for February 5, 2009.

In some circumstances the creditor may allow you to cure the default on your loan and stop the foreclosure.  You may contact this office to find out if reinstatement of your loan will be allowed, and if allowed, what specific amount will be necessary to fully cure the default.  Please be advised that if you are allowed to cure the default on your loan, payment must be made in the form of cash, cashier's check or certified funds.

If you are currently or have within the last nine (9) months been in the military service AND joined after signing the Security Deed now in foreclosure, please notify this office immediately.  You may be entitled to

relief under the Servicemembers Civil Relief Act. When contacting this office as to your military service, you must provide us with positive proof as to your military status. If you do not provide this information, we will assume that you are not entitled to protection under the above mentioned Act.

This letter is an attempt to collect a debt and any information obtained by virtue of it will be used for that purpose. All communication about this foreclosure must now be made through this law firm. Your creditor will no longer accept any payments or communications from you. For further information about this matter you may contact this office.

**BE GOVERNED ACCORDINGLY.**

Sincerely,

**MORRIS, SCHNEIDER, PRIOR, JOHNSON & FREEDMAN, LLC**

*Joel A. Freedman*

Joel A. Freedman, Esq.

/CXJ
Enclosures
cc:     American Home Mortgage Servicing, Inc.

## NOTICE OF
## MORTGAGE FORECLOSURE SALE

ALABAMA, MOBILE COUNTY

Default having been made in the indebtedness secured by that certain mortgage executed by Bernice Muhammad, a single woman to Option One Mortgage Corporation, A California Corporation, dated July 30, 2002, said mortgage being recorded in Book 5201, Page 1385, in the Office of the Judge of Probate of Mobile County, Alabama. Said Mortgage was last sold, assigned and transferred to HSBC Bank USA, National Association as Trustee for Merrill Lynch Mortgage Investors, Inc. Mortgage Loan Asset-Backed Certificates, Series 2002-HE1.

The undersigned, HSBC Bank USA, National Association as Trustee for Merrill Lynch Mortgage Investors, Inc. Mortgage Loan Asset-Backed Certificates, Series 2002-HE1, under and by virtue of the power of sale contained in said mortgage, will sell at public outcry to the highest bidder for cash before the courthouse door of Mobile County, Alabama, during the legal hours of sale, on February 5, 2009, the following real estate, situated in Mobile County, Alabama, to-wit:

That lot of land described as beginning at a point on the East line of Cherokee Street, 250 feet Southwardly from the South line of Government Street, measured along the East line of Cherokee Street, thence Southwardly along the East line of Cherokee Street 50 feet to a point for a front, thence Eastwardly at right angles to Cherokee Street 145 feet 3 inches to a point, thence Northwardly and parallel with Cherokee Street 104 feet, more or less, to a point; thence Southwestwardly on a line parallel with Government Street to the point of beginning. Also, that lot of land described as commencing at a point on the East side of Cherokee Street 270 feet Northwardly from the Northeast corner of Cherokee Street and LaSalle Avenue, running thence Northwardly on the East side of Cherokee Street 14 feet 3 inches to the South line of the property herein above described; thence Eastwardly along said South line 145 feet 3 inches to a point; thence Southwardly 14 feet 3 inches, thence Westwardly 145 feet 3 inches to the place of beginning. All of said measurements being more or less. Being the North 14 feet, 3 inches of Lot 67, Lee Place, as per plat recorded in Deed Book 132, N.S., Page 344. Being the same property described in Real Property Book 3997, Pages 0423-0424 as recorded in the office of the Judge of Probate, Mobile County, Alabama.

Said property is commonly known as **255 Cherokee Street, Mobile, AL 36606**

The indebtedness secured by said Mortgage has been and is hereby declared due because of default under the terms of said Mortgage and Note, including but not limited to the nonpayment of the indebtedness as and when due. The indebtedness remaining in default, this sale will be made for the purpose of paying the same, all expenses of the sale, including attorney's fees and all other payments provided for under the terms of the Mortgage and Note.

Said property will be sold subject to the following items which may affect the title to said property: all zoning ordinances; matters which would be disclosed by an accurate survey or by an inspection of the property; any outstanding taxes, including but not limited to ad valorem taxes, which constitute liens upon said property; special assessments; all outstanding bills for public utilities which constitute liens upon said property; all restrictive covenants, easements, rights-of-way; the statutory right of redemption pursuant to Alabama law; and any other matters of record superior to said Mortgage. To the best of the knowledge and belief of the undersigned, the party in possession of the property is Bernice Muhammad or tenant(s).

**HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR MERRILL LYNCH MORTGAGE INVESTORS, INC. MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES 2002-HE1**
as holder of said mortgage

John Rudd
Johnson & Freedman, LLC
1587 Northeast Expressway
Atlanta, GA  30329
(770) 234-9181
MSP File No.226.0302927AL\s

Mobile Press Register
01/09, 01/16, 01/23/2009

THIS LAW FIRM IS ATTEMPTING TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE
USED FOR THAT PURPOSE.